UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 401 PROPERTIES LIMITED PARTNERSHIP, | ) | Case No. 14-44983 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

**FINAL ORDER EXTENDING AUTHORIZED USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon consideration of the motion (the "Motion") of 401 Properties Limited Partnership (the "Debtor") requesting an extension of its authorized use of cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; a hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); the undersigned parties having stipulated and agreed to the terms of this order, all objections to the Motion having either been overruled or withdrawn; sufficient cause appearing therefor; it is hereby ORDERED:

1. The Motion is hereby granted subject to the terms and conditions set forth in this Order.

2. During the period (the "Budget Period") covered by the budget attached hereto as Exhibit A (the "Budget"), the Debtor is authorized to use cash collateral to pay only (i) those expenses set forth in the Budget, in the amounts set forth therein plus a ten percent (10%) variance for any individual expense contained in the Budget, not to exceed a total variance of five percent (5%) of the total operating expenses for the Budget Period, and (ii) any other expenses approved by the Court. The Debtor shall make the "Real Estate Tax" payments reflected in the Budget to Bridgeview Bank Group ("Bridgeview"), and Bridgeview shall use

such payments solely for the purpose of paying real estate taxes on the real property commonly known as 401 S. LaSalle St., Chicago, Illinois ("Property") in accordance with the Budget as follows: (a) $35,000 per month shall be applied towards Debtor's current tax escrow account, and (b) the remaining balance of at or around $20,000 a month shall be held for the payment of Debtor's past due real estate tax obligations, and shall not be used or applied for any other purpose.

3. As adequate protection for any use or diminution in the value of any interests of Bridgeview, 401 LaSalle Lenders LLC ("401 Lenders"), Fortuna Stream, L.P., Legacy Re, Ltd. or Rock Solid Gelt Limited (collectively, the "Creditors") in the Debtors' prepetition assets ("Prepetition Collateral"), including the cash collateral subject to the Motion, the Creditors are hereby granted, retroactive to the Debtor's petition date ("Petition Date") and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, and fully perfected replacement liens of the highest available priority upon (i) any property that the Debtor acquires after the Petition Date including, without limitation, any rents, profits and cash generated by the Debtor's prepetition and postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property. However, the liens granted in this paragraph ("Adequate Protection Liens") shall (i) only attach to the same extent and with the same validity and priority as the Creditors' existing interests, if any, in the Prepetition Collateral, (ii) be limited to the extent of the aggregate diminution subsequent to the Petition Date in the value of the Creditors' existing interests in the Prepetition Collateral (including the cash collateral subject to the Motion), whether by

depreciation, use, sale, loss, or otherwise, and (iii) be subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date.

4. Further, as additional adequate protection, the Debtor shall make the "Interest Only" payments (the "Payments") reflected in the Budget, for the months of April, May and June, 2015 payable on the 15th of each month. The Parties agree that as an accommodation to 401 Lenders (and without prejudice to any parties right to dispute the claims of 401 Lenders), the Payments shall be made to a segregated account in the name of 401 LaSalle Lenders LLC to be maintained at Bridgeview. Upon deposit of these funds into 401 Lenders' account at Bridgeview, Bridgeview is permitted to take the Payments directly from the 401 Lenders' account without notice to the Debtor or 401 Lenders, and apply the Payments in accordance with Debtor's Budget and this Order. The Payments shall be applied to the amounts, if any, due and owing under the Senior Notes (as defined hereafter) for interest accruing on the original outstanding principal amounts of the Senior Notes and then to the outstanding original principal amounts of the Senior Notes. As used herein, "Senior Notes" means the two promissory notes dated March 10, 2009 executed by the Debtor in favor of Bridgeview Bank Group in the original principal amounts of $6,274,288.46 and $1,600,711.54, respectively.

5. Bridgeview's use and application of the Payments shall be subject to the Bankruptcy Code and applicable federal and state law. Except as set forth above, this Order does not authorize the direct payment of any amounts to 401 Lenders.

6. This Order does not constitute a finding of this Court regarding the validity, priority or extent of the Creditors' respective interests in the Debtor's property.

7. The grants of adequate protection provided in this Order are without prejudice to the Creditors' rights to seek additional adequate protection of their interests in the Debtor's property.

8. Except to the extent otherwise set forth herein, this Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not the Creditors elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the Creditors may, in their sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of their liens and security interests.

9. Each of the following events shall constitute an event of default, upon the occurrence of any of which, the Debtor shall immediately cease using cash collateral and shall hold all cash collateral pending further order of the Court: (a) entry of an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (b) entry of an order appointing a chapter 11 Trustee; (c) entry of an order dismissing the Debtor's case; (d) failure to obtain entry, by June 30, 2015, of an additional order authorizing the further use of cash collateral by the Debtor; and (e) the Debtor's failure to comply with any payment obligations in this Order, which failure remains uncured for a period of five (5) business days.

10. The entry of this Order is without prejudice to the Debtor's right (i) to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient, (ii) to contest any entity's right to future adequate

protection, and (iii) to challenge the extent, validity and priority of any of the Creditors' liens, claims or interests in the Prepetition Collateral.

11. Nothing herein shall affect the right of any party to dispute (i) the validity, priority, secured status, amount, or extent of any of the Creditors' claims, or (ii) the standing of any of the Creditors to be heard on particular matters in the Debtor's case.

12. Debtor shall provide the Creditors with copies of the monthly bank statements into which any of the cash collateral subject to this Order is deposited and withdrawn within ten (10) business days of the date when such statements are available to the Debtor.

13. The Debtor's authority to use the Creditors' cash collateral under this Order shall be effective immediately and shall extend through June 30, 2015.

14. Notwithstanding anything to the contrary in this Order, to the extent that the Budget contemplates payments for services rendered by entities in which Michael Horrell and Goriana Alexander have an interest, such payments shall not exceed the actual costs that those entities incurred in rendering such services to the Debtor. The use and payment of cash collateral shall be further subject to the representations and stipulations in open court upon the entry of the prior cash collateral order dated February 4, 2014.

Dated: April 7, 2015

**ENTER:**

*Jacqueline P. Cox*
Jacqueline P. Cox
United States Bankruptcy Judge

AGREED TO BY THE UNDERSIGNED PARTIES:

401 Properties Limited Partnership

By: _____
    Peter J. Roberts
    Shaw Fishman Glantz & Towbin LLC
    321 North Clark Street, Suite 800
    Chicago, IL 60654
    (312) 541-0151

Bridgeview Bank Group

By: _____
    Adam B. Rome
    Greiman, Rome & Griesmeyer, LLC
    200 West Madison, Suite 755
    Chicago, IL 60606
    (312) 428-2750

Legacy Re Ltd. and Rock Solid Gelt Limited

By: _____
    Lawrence M. Benjamin
    Neal, Gerber & Eisenberg LLP
    Two North LaSalle St., Suite 1700
    Chicago, IL 60602-3801
    (312) 269-8053

401 LaSalle Lenders LLC

By: _____
    Joseph D. Frank /Jeremy C. Kleinman/
    Frank/Gecker LLP
    325 North LaSalle St., Suite 625
    Chicago, IL 60654
    (312) 276-1400

# EXHIBIT A

{4606 EXH A0139919.DOC}

## 401 S LaSalle
## Budget of Income and Expenses

| 401 S LaSalle | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|
| **INCOME** | | | |
| Base Rent | $ 220,376.48 | $ 220,376.48 | $ 220,376.48 |
| Tenant Rebill- Taxes CAMS Etc | $ - | | |
| TOTAL INCOME | $ 220,376.48 | $ 220,376.48 | $ 220,376.48 |
| | | | |
| **OPERATING EXPENSES** | | | |
| **Cleaning** | | | |
| Janitorial Employee Direct | $ 12,257.60 | $ 11,955.38 | $ 11,955.38 |
| Incidental Cleaning | $ 100.00 | $ 100.00 | $ 100.00 |
| Waste management | $ 952.90 | $ 952.90 | $ 952.90 |
| Paper, Supplies & Misc. | $ 2,906.25 | $ 2,741.25 | $ 2,741.25 |
| Total Cleaning | $ 16,216.75 | $ 15,749.53 | $ 15,749.53 |
| | | | |
| **Utilities** | | | |
| Electric | $ 10,700.00 | $ 10,700.00 | $ 10,700.00 |
| Gas | $ 7,744.15 | $ 7,744.15 | $ 7,744.15 |
| Water/Sewer | $ 1,155.00 | $ 1,155.00 | $ 1,155.00 |
| Total Utilities | $ 19,599.15 | $ 19,599.15 | $ 19,599.15 |
| | | | |
| **Payroll & Benefits** | | | |
| Engineering Payroll | $ 6,666.68 | $ 6,666.68 | $ 6,666.68 |
| Payroll Benefits | $ - | $ - | $ - |
| Contractor Engineerig | $ - | $ - | $ - |
| Security Service Personnel Direct | $ 6,470.51 | $ 4,260.00 | $ 4,260.00 |
| Total Payroll & Benefits | $ 13,137.19 | $ 10,926.68 | $ 10,926.68 |
| | | | |
| **Repairs Maintenance & Supplies** | | | |
| Building Maintenance | $ - | $ 1,201.04 | $ 1,201.04 |
| HVAC | $ - | $ 79.15 | $ 100.00 |
| Plumbing | $ - | $ 535.89 | $ 537.00 |
| Elevator Repair & Maintenance | $ 2,099.00 | $ 2,099.00 | $ 2,099.00 |
| Fire Panel Inspection | $ - | $ 271.00 | $ 271.00 |
| Façade Repairs | $ - | $ - | $ - |
| Deffered Maintenance | $ - | $ - | $ 1,000.00 |
| Misc. Repairs & Maintenance | $ 2,825.00 | $ 2,825.00 | $ 2,825.00 |
| Lightbulbs | $ - | $ 841.99 | $ 500.00 |
| Security Equipment | $ - | $ - | $ - |
| Remote Monitoring | $ - | $ - | $ - |
| Total Repairs Maintenance & Supplies | $ 4,924.00 | $ 7,853.07 | $ 8,533.04 |
| Uniforms | $ - | $ - | $ - |
| Total Contract Services | $ - | $ - | $ - |
| | | | |
| **Administrative** | | | |
| Management Fee | $ 15,208.66 | $ 15,208.66 | $ 15,208.66 |
| Insurance | $ 3,215.43 | $ 3,235.43 | $ 3,215.43 |
| Accounting | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| Bank Fees | $ 492.60 | $ 492.60 | $ 492.60 |
| Telephone/ Internet | $ 870.00 | $ 870.00 | $ 870.00 |
| Misc. Administration/Commissions | $ 6,859.50 | $ 6,859.50 | $ 6,859.50 |
| Decorating | $ - | $ - | $ - |
| Parking | $ - | $ - | $ - |
| Inspections | $ - | $ - | $ - |
| Fees & Permits | $ - | $ 300.00 | $ - |
| Pest Control | $ 82.00 | $ - | $ 82.00 |
| Marketing/ Quarterly events | $ - | $ - | $ - |
| Software | $ - | $ - | $ - |
| Signage (Incl. directory strip) | $ 56.14 | $ 50.00 | $ 50.00 |
| UST Quarterly Fee | $ - | $ 325.00 | $ - |
| Total Administrative | $ 28,284.33 | $ 28,841.19 | $ 28,278.19 |
| | | | |
| Total Operating Expenses | $ 82,161.42 | $ 82,969.62 | $ 83,086.59 |
| | | | |
| Real Estate Tax | $ 35,000.00 | $ 35,000.00 | $ 35,000.00 |
| **Net Operating Cash Flow** | $ 103,215.06 | $ 102,406.86 | $ 102,289.89 |
| | | | |
| Interest Only - First Mortgage* | $ 98,212.22 | $ 97,828.77 | $ 97,828.77 |
| Net Operating Income | $ 5,002.84 | $ 4,578.09 | $ 4,461.12 |
| Frontline Fee - Subj to Bk Ct approval | $ 25,000.00 | $ - | $ - |
| Net Total | $ (19,997.16) | $ 4,578.09 | $ 4,461.12 |

* $78k to Bridgeview. Remainder to back RE taxes.