# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

In re 401 Properties Limited
Partnership,
              Debtor.

Bankr. No. 14-44983

Chapter 11

Judge Jacqueline P. Cox

## Memorandum Opinion

### I. Jurisdiction

Bankruptcy courts have authority by statute to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Core proceedings include motions to terminate, annul, or modify the automatic stay, the issue presented by the matter at Docket No. 206: Legacy Re and Rock Solid Gelt's Motion for an Order Dismissing the Bankruptcy Case, or, in the Alternative, Granting Relief from Automatic Stay. 28 U.S.C. § 157(b)(2)(G).

### II. Facts and Legal Analysis

This matter involves the efforts of the Debtor, 401 Properties Limited Partnership ("Debtor"), to reorganize under Chapter 11 of the Bankruptcy Code. The Debtor is a single asset real estate entity which owns commercial real estate, a building located at 401 S. LaSalle Street, Chicago, Illinois (the "Property"). The property is a multi-tenant office building with retail space on the ground floor. Ferenc Affidavit, ¶ 4, Docket. No. 16, Ex. E. The Debtor's amended petition alleges that its assets are worth between $1 million and $10 million. Docket No. 14. The claims herein are in excess of $15 million.

The United States Trustee asks that this Chapter 11 case be dismissed because the Debtor did not file all due Monthly Operating Reports ("MOR"); review of the docket discloses that the

MOR for April 2016 was filed on May 20, 2016 and that the May 2016 and June 2016 MORs were filed late on August 3, 2016. The U.S. Trustee also complains that the Debtor has no attorney when it can not proceed in court without counsel; that U.S. Trustee fees are past due and that the Debtor's principals are using the bankruptcy system in a struggle for control of the Debtor.

After the Motion to Dismiss, Motion for Relief from Automatic Stay and Motion to Appoint Chapter 11 Trustee were taken under advisement on May 18, 2016 the Court heard a Motion to Use Cash Collateral (Docket No. 272) on June 28, 2016. The court allowed the continued use of cash collateral and required 401 Properties, Inc. to file a plan and disclosure statement on or before July 20, 2016. *See* Order at Docket No. 283. A plan and disclosure statement have been filed. Review of the plan reveals that the Debtor has not filed it in good faith and that this case was not filed in good faith.

The main issue is whether the Debtor's principals are using the Bankruptcy Code to effectuate a hostile takeover of the Debtor by purchasing claims to squeeze out Legacy Re, Ltd. ("Legacy Re") and Rock Solid Gelt Limited ("Rock Solid") who hold rights as participants or co-owners of some of the Debtor's obligations.

The Bankruptcy Code provides:

> that on request of a party in interest and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

The Bankruptcy Code states that cause to dismiss a chapter 11 case includes the following:
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;

>(F) unexpected failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>(H) failure to timely provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>(I) failure to timely pay taxes after the date of the order for relief or to file tax returns due after the date of the order of relief;
>(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>(K) failure to pay any fees or charges required under chapter 123 of title 28;
>(L) revocation of an order of confirmation under section 1144;
>(M) inability to effectuate substantial consummation of a confirmed plan;
>(N) material default by the debtor with respect to a confirmed plan;
>(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

There are no specific standards for determining whether a chapter 11 debtor has filed a petition without good faith, however, courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the Bankruptcy Code and factors which evidence that a debtor's petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings, L.L.C. (In re Vallambrosa Holdings, L.L.C.)*, 419 B.R. 81, 85 (Bankr. S.D. Ga. 2009).

"Although section 1112(b) does not explicitly provide that the lack of good faith may constitute cause, section 1129(a)(3) does require that plans be 'proposed in good faith'; courts have sensibly considered bad faith to be an acceptable basis for conversion or dismissal." *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989). Good faith is recognized as a prerequisite for eligibility to file a chapter 11 case and lack of good faith may constitute "cause" for dismissal of a case under § 1112(b) of the Bankruptcy Code. *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984).

Bad faith may be found where:

1. a debtor has few or no unsecured creditors;
2. there has been a previous bankruptcy petition by the debtor or a related entity;
3. the prepetition conduct of the debtor has been improper;
4. the petition effectively allows the debtor to evade court orders;
5. there are few debts to nonmoving creditors;
6. the petition was filed on the eve of foreclosure;
7. the foreclosed property is the sole or major asset of the debtor;
8. the debtor has no ongoing business or employees;
9. there is no possibility of reorganization;
10. the debtor's income is not sufficient to operate;
11. there was no pressure from nonmoving creditors;
12. reorganization essentially involves the resolution of a two-party dispute;
13. a corporate debtor was formed and received title to its major assets immediately before the petition and
14. the debtor filed solely to create the automatic stay.

*In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986).

The Legacy Re - Rock Solid Motion for Relief from the Automatic Stay (Docket No. 206) alleges that the Debtor has no employees, that its sole asset has no equity in that its Schedule A of Real Estate states that the property is worth $15 million with claims in excess of $19 million and that the secured debt encumbering the real estate matured long ago. That motion also alleges that the Debtor has few creditors other than the movants. In essence, the Debtor has no purpose for pursuing Chapter 11 relief except to avoid foreclosure and the lawsuit contesting which entity is the Debtor's general partner.

The Court finds that this bankruptcy case serves none of the purposes for which bankruptcy relief is designed, to increase the value of estate assets to maximize distributions to creditors and to maintain going concerns. Here, the Debtor's principals are trying to disadvantage Legacy Re and Rock Solid by assigning via settlement with 330 South Wells LLC only $200,000 and certain litigation proceeds. Legacy Re and Rock Solid hold 29% of the 330 South Wells claim against the Debtor. According to 330 South Wells' Proof of Claim No. 9 it is

owed $4,264,165.93 on its mortgage lien. The only reason the Debtors' principals propose to pay $200,000 towards a $4,264,165.93 debt held by the principals is to squeeze out Legacy Re and Rock Solid who are part owners of that debt.

Legacy Re and Rock Solid filed a Motion for Appointment of a Trustee (Docket No. 248). The purported successor general partner 401 Properties, Inc. filed a Motion to Withdraw Debtor's Alleged General Partner (at Docket No. 242). That issue was addressed in the June 30, 2016 order that, in addition to allowing the use of cash collateral, designated 401 Properties, Inc. as the Debtor's representative for cash collateral and budgeting purposes. The basis for the motion regarding the general partner is part of a control dispute amongst the Debtor's principals which is the basis of a pending state court declaratory judgment action, Case No. 2015-CH-16611 in the Circuit Court of Cook County, Illinois. *See* Motion for Determination that Automatic Stay Does Not Apply to Declaratory Judgment Lawsuit, Docket No. 194. That motion was granted on March 2, 2016. Docket No. 212. This Court concludes herein that all matters involving these parties belong in state court and that appointment of a chapter 11 trustee is not warranted where no legitimate bankruptcy objectives are being pursued.

When this chapter 11 case was filed 401 LaSalle General Partner, LLC (an entity controlled by Michael Horrell and/or Goriana Alexander) was the Debtor's general partner. Motion for Determination, Docket No. 194. After certain guaranties were released 401 Properties, Inc. (an entity controlled by Leon Greenblatt or entities related to him) claimed that it was the Debtor's general partner. Transcript I, p. 43. Motion for Determination, Docket No. 194, pp. 5-6.

Michael Horrell testified herein on May 17, 2016. He has served as the authorized agent for the Debtor's general partner, 401 LaSalle General Partner, LLC. He informed that Fortuna Stream ("Fortuna") made a loan to Scattered Corporation ("Scattered"), an entity controlled by Leon Greenblatt in the amount of $7,250,000 in 2006. May 17, 2016 Transcript, p. 137 ("Transcript I"). He helped Fortuna's managing partner Karen Brenner arrange the loan. Transcript I, p. 6. His involvement representing the Debtor as its general partner in having the Debtor put up collateral while helping Karen Brenner of Fortuna as lender may be a conflict of interest or self-dealing. Transcript I, p. 79. *See* Judge Virginia Kendall's ruling in *Wachovia*

-5-

*Securities, LLC v. Jahelka*, 586 F.Supp.2d 972, 981 (N.D. Ill. 2008) (aff'd, 674 F.3d 743 (7th Cir. 2012)), where she noted that Leon Greenblatt's dual roles as lender and borrower in a loan transaction amounted to a clear conflict of interest.

The purpose of the loan herein was to buy a loan from Aquila, a utility company that later went bankrupt. Scattered was the borrower; it used the borrowed funds to buy the Aquila loan. Transcript I, pp. 6-12. Fortuna received several pieces of collateral, including a mortgage on the Debtor's building at 401 S. LaSalle Street. However, the Debtor did not receive any of the proceeds of that loan. Transcript I, pp. 119-20. Scattered has never been a limited partner of the Debtor. *Id.*, p. 120.

Horrell commented on his dual role in the transaction. Transcript I, p. 79.

Scattered defaulted on the loan and a foreclosure action was filed.

In 2009 upon default the parties executed a Multi-Party Exchange Settlement Agreement. Therein another piece of collateral, a building at 407 S. Dearborn Street, Chicago, Illinois was deeded in lieu of foreclosure to an entity controlled by Fortuna, 407 Dearborn LLC. That transfer reduced the amount of the debt owed Fortuna.

In 2009 the Debtor gave Fortuna a note for $3.2 million, secured by a mortgage on the Debtor's building. The original mortgage given to Fortuna was released. Transcript I, pp. 19-20. At that time Fortuna assigned part of the note to Rock Solid.

Excel Acquisitions, LLC and 330 South Wells, LLC dispute whether Legacy Re and Rock Solid are assignees or just loan participants. The note received by Fortuna states that as payee or holder it could assign all or a portion of its rights, title and interest in the note and security to any person, firm, corporation or other entity without consent of the maker, the Debtor. Exhibit 5, ¶ 18. The mortgage, Exhibit 6, states that the covenants therein shall bind and rights thereunder shall inure to the respective successors and assigns of the lender and borrower. The document that reflects the transfer to Rock Solid is designated "Assignment" and transfers to Rock Solid a 48.276% interest in the note and a junior mortgage executed by the Debtor. Docket No. 92, Exhibit No. 8 to Appendix in Support of Plaintiff's Statement of Undisputed Facts. The document that reflects the transfer to Legacy Re is designated "Assignment" and transfers to Legacy Re a 6.206% interest in the Debtor's note and junior mortgage.

-6-

For purposes of this bankruptcy case this Court finds that Legacy Re and Rock Solid are secured creditors as the assignments they hold include part of a mortgage, a classic security interest. This finding is not binding on any state court. To find otherwise would allow the Debtors' principals to disregard the interests held by Legacy Re and Rock Solid. In *Sirazi v. General Mediterranean Holding,* the Seventh Circuit affirmed a trial court's entry of judgment on a conspiracy claim where defendants failed to apply distributions to an investor's security interest. 2016 WL 3384916, * 3 (7th Cir. 2016) ("Likewise it conspired with Rezko to transfer his property to it without paying anything to Sirazi, thus further deflecting to GMH money owed Sirazi. As there was no possible excuse for the deliberate misconduct, amounting to theft, in which GMH engaged, there is no basis for overruling the jury's award of $5 million in punitive damages against GMH.").

In 2011 Legacy Re and Rock Solid sought to obtain 407 Dearborn exclusively. Those entities are owned by Sid Ferenc. In exchange for a reduction of the amounts they held in the Fortuna note and their interest in the Debtor, one of Mr. Ferenc's entities, Rock Solid, obtained title to 407 Dearborn. Transcript I, pp. 32-33. Mr. Horrell put this transaction together. Previously the Ferenc entities held over 50% of the note and after the Multi-Party Agreement Rock Solid held 18.7192% of the 401 Properties note. After the transfer Legacy Re and Rock Solid together held 29 % of the 401 Properties note. Transcript I, pp. 33-36.

The Debtor filed bankruptcy case number 10-28114 in 2010. It was dismissed on August 16, 2010 for cause and found to be a bad faith filing; the Debtor was barred from refiling for bankruptcy relief before February 12, 2012. The dismissal orders entered herein will bar the Debtor from seeking bankruptcy relief before September 1, 2019.

Following that dismissal the case went back to state court where Bridgeview Bank was foreclosing on the real estate. The state court appointed a receiver on December 8, 2014. *See* Response in Opposition to Motion for Relief from Stay, Docket No. 219, ¶ 15, p. 5. This bankruptcy case was filed ten days later on December 18, 2014.

The property was failing; its occupancy rate was only 53%. A tenant, the U.S. government, was leaving 32% of the building vacant. To bring in a new face, Horrell acquired the note from Bridgeview, borrowing personally to do so.

There were two notes: one for $7.8 million and another for $1.6 million, which were incurred at different times. Bridegeview Bank Group was the junior lienholder at first. When the debt owed the senior lienholder, Wells Fargo, note went into default Bridgeview Bank Group bought it to protect its second position. Transcript I, p. 113. As part of that transaction Horrell installed his entity 401 South LaSalle General Partners as the general partner of the Debtor. He was a partial owner, member and manager of that entity. Transcript I, pp. 39-43. The disassociated former general partner was 401 Properties, Inc. Andrew Jahelka was its president. Horrell recalls Leon Greenblatt (whose wife has an interest in the Debtor) and Richard Nichols being involved with 401 Properties, Inc. Transcript I, pp. 45-46. Horrell testified that Richard Nichol, Andrew Jahelka and Leon Greenblatt controlled the 401 Properties, Inc. entity. Excel's attorney objected to his saying that they controlled that entity because they were only limited partners therein without authority to bind the entity. The objection will be overruled; it is sufficient for purposes of this proceeding that those three individuals were involved in the formation or operation of that entity. No evidence was offered showing that they had no involvement in the formation or operation of that entity.

Horrell assumed control of the Debtor as its general partner. He also controlled 401 LaSalle Lenders, which filed for bankruptcy relief in 2015, case no. 15-39922. Bridgeview Bank financed 401 LaSalle Lender's purchase of the Bridgeview loan. Transcript I, p. 87. He claims that he owns the note, but admits that Bridgeview Bank has possession of it. *Id.*, pp. 88-89.

Due to unpaid taxes, Lenders defaulted on that loan. Transcript I, p. 56. An additional sum in the amount of $1.7 million was borrowed to pay down the taxes. That money was advanced to 401 Properties, Inc. to pay the real estate taxes. *Id.* Horrell labels that a protective advance. 401 LaSalle Lenders acquired the Bridgeview note and mortgage. Lenders later assigned the mortgage securing the $7.8 million loan back to Bridgeview Bank as collateral. *Id.*, p. 57; Debtor's Motion to Sell Free and Clear, Docket No. 106, ¶ 7. He testified that there are no documents showing a transfer of the note by Lenders to Bridgeview.

Horrell testified that Lenders obtained a right of first refusal in subparagraph (h) of Exhibit 14, the assignment agreement between Lenders and Bridgeview Bank to make sure that if Lenders assigned the mortgage back to Bridgeview they could not be undercut by having

-8-

Bridgeview sell it to Greenblatt. It was put in place so that if Leon Greenblatt came in he could not squeeze Lenders out of its position in the property. Transcript I, pp. 84, 86, 91.

Excel Acquisitions claims to be the assignee of the note and mortgage. However, Bridgeview did not offer Lenders the note and mortgage pursuant to the right of first refusal before the assignment to Excel. Horrell testified that Bridgeview did not comply with subparagraph (h). He also testified that he has not asserted the right of first refusal. *Id.*, at p. 92.

Horrell claims to still be the Debtor's general partner in spite of Excel's position that due to the release of the personal guaranties of certain partners, 401 Partners, Inc. should be restored as general partner of the Debtor.

The Debtor filed a Motion to Sell Property Free and Clear of Liens Under Section 363(f) of the Bankruptcy Code. Docket No. 106. The Debtor withdrew that motion on March 2, 2016. Docket No. 211. Horrell opined that it was withdrawn due to Excel's opposition to it. It was opposed due to the tax consequences of a sale. Transcript I, p. 67. Legacy Re and Rock Solid also opposed the sale motion. Docket No. 117. They urged the court to first decide the priority and extent of the liens on the property. For one, the first holder at the time, Lenders, claimed to be owed $15 million, more than double the original amount of the loan. If allowed to sell before its claim could be found to be for a lesser amount, it could rig the sale by bidding at a level so high that others would be discouraged from bidding. *Id.*, ¶ 4.

Horrell testified that Legacy Re and Rock Solid sued him for breach of fiduciary duty for self-dealing, i.e., hiring entities he owned to work at the 407 Dearborn building. In spite of those accusations Horrell hired the same entities to work at the 401 South LaSalle building. He also admitted that the Debtor borrowed $1.17 million in protective advances from another entity he had an interest in, LaSalle Lenders. Transcript I, p. 83. This may represent a continuing conflict of interest or self-dealing. Eventually $2.2 million in protective advances were made.

Horrell also testified that he and others who have guaranteed the Debtor's obligations are entitled to a 1.75% interest payment each year. For the prepetition and postpetition periods that amounts to about $972,000. *Id.*, pp. 97-99.

Was Horrell and his related entity required to resign when the debts they guaranteed were released by Excel on October 30, 2015 when Excel acquired the operative debts? Horrell posits

that the $2.2 million in protective advances should also be paid before a resignation. However, the operative document, the 2010 Second Amended and Restated Agreement of Limited Partnership of 401 Properties Limited Partnership, ¶ 1610 requires the release of Guaranteed Indebtedness not other debts. Excel Acquisitions Exhibit 10, ¶ 1610. Horrell has not shown that the "protective advances" are Guaranteed Indebtedness.

Horrell admitted that he is one of the owners of Loop Chic LLC which occupies five suites in the Debtor's property for which no rent is paid. According to him, it is there to avoid paying for tenant improvements to another entity that might lease the space and to avoid paying commissions for the leasing of that space. *Id.*, p. 108. What an interesting excuse for not paying rent.

Legacy Re and Rock Solid (controlled by Sidney Ferenc) acquired from Fortuna Stream a 54% undivided interest in the loan made to Scattered in 2009 at a cost of $3.9 million. Transcript I, p. 128-131. Pursuant to the Multi-Party Exchange Agreement executed in 2011 Legacy Re and Rock Solid acquired 100% ownership of a building at 407 Dearborn Street, Chicago, Illinois in exchange for about half of its initial interest. They now hold a 29% interest in the loan documents. 330 South Wells LLC now holds the remaining 71% interest since an October 30, 2015 assignment.

There is an issue as to whether Legacy Re and Rock Solid are participants or interest holders regarding the loan documents. In Adversary Proceeding 15-499 Legacy Re and Rock Solid, as Plaintiffs therein, sought leave to add new transferees Excel Acquisitions, LLC and Guterman Partners Energy, LLC as defendants. Excel Acquisitions objected and argued that because Legacy Re and Rock Solid are not holders of the note(s) in question they lacked standing. 330 South Wells LLC joined in that effort. In allowing the proposed amendment this Court held that Legacy Re and Rock Solid could enforce rights they held under Illinois law even though they could not proceed under the Uniform Commercial Code as holders in due course. February 18, 2016 Order, Docket Number 68 in Adversary Proceeding 15-499.

On March 2, 2016 the Debtor was authorized to employ JCF Real Estate, Inc. as its property manager. Order, Docket Number 213. Mr. Michael Goebig of JCF Real Estate testified that the refusal of Horrell to facilitate them setting up a bank account for the building

limited their ability to account for the building's funds and to prepare Monthly Operating Reports. Transcript I, p. 147-149. He also expressed concern that Horrell's Loop Chic LLC entity does not pay rent for the five units it occupies in the Debtor's building and that his entity needs to be the building's exclusive leasing agent. *Id.*, p. 150-155. He also testified that Horrell and Leon Greenblatt disagree on using the new account. *Id.*, p. 160.

Andrew Jahelka testified that he is a limited partner of the debtor and is the president of its general partner, 401 Properties, Inc. Leon Greenblatt is the 100% shareholder of 401 Properties, Inc. Transcript I, p. 184. He is also a principal of Scattered Corporation, the entity that received the loan funds from Fortuna. Leon Greenblatt and Richard Nichols are also principals of Scattered. Transcript I, p. 176. The Debtor's building was given as collateral to Fortuna in the form of a junior mortgage. He admitted that the Debtor received no benefit from this transaction. Transcript I, p. 177.

He opined that by operation of its partnership agreement once Horrell, Goriana Alexander and Randy Soule were released from certain guaranties of the Bridgeview Bank indebtedness, 401 Properties, Inc., the disassociated general partner, would no longer be disassociated and would be restored as the Debtor's general partner. Transcript I, p. 169. The indebtedness refers to debt incurred by Lenders to acquire the partnership's debt to Bridgeview Bank. *See* Excel Exhibit 10, ¶ 1610.

Horrell acknowledged receipt of the release. Transcript I, p. 172.

Jahelka testfied that Aura Real Estate Management, an entity associated with Horrell, was replaced because Horrell would not resign once the relevant debt was released.

330 South Wells, LLC bought Fortuna's loan; it received an assignment of the mortgage on February 13, 2015. Transcript I, pp. 180, 183.

Jahelka and Richard Nichols are managers of Excel Acquisitions. 330 South Wells, LLC is the sole member of Excel Acquisitions. Leon Greenblatt and Richard Nichols manage 330 South Wells, LLC. Scattered Corporation is a member of 330 South Wells, LLC. Jahelka, Leon Greenblatt and Richard Nichols are the shareholders of Scattered Corporation individually or through their various estate planning entities. Transcript I, p. 185.

Jahelka authorized the filing of a proposed plan of reorganization that would pay

unsecured creditors 100% of their claims. However, it would pay 330 South Wells only $200,000 and a percentage of funds recovered by a litigation trust, if the trust succeeds in suing Horrell. *Id.,* pp. 195-198. It would pay Legacy Re and Rock Solid 29% of what 330 South Wells recovers. Jahelka emphasized that Legacy Re and Rock Solid have rights only to what 330 South Wells LLC collects.

Legacy Re and Rock Solid may not be parties to an inter-creditor agreement that defines them as participants, however, they should not be squeezed out in this situation where Leon Greenblatt and Jahelka are purchasing claims to reduce their recoveries, not in a genuine effort to maximize bankruptcy estate assets for the benefit of all creditors or to preserve an existing concern. As principals of Scattered Greenblatt and Jahelka benefitted Scattered by imposing debt on the Debtor without the Debtor receiving any of the proceeds of the loan for which it was used as collateral. Now that rights to the debt have been split off to Legacy Re and Rock Solid, they want to limit the recovery to insure that Legacy Re and Rock Solid do not recover on their rights.

This bankruptcy case represents an effort to secure a hostile takeover of the Debtor through the purchase of claims and a litigation strategy that serves no bankruptcy purposes. There is now pending in state court a lawsuit to remove 401 LaSalle General Partners LLC as general partner of the Debtor. That effort should be pursued in state court.

By dismissing this bankruptcy case, this Court abstains from deciding Legacy Re and Rock Solid's claims in Adversary Proceeding 15-499 that they have standing and that they are secured creditors for nonbankruptcy purposes. The Court notes that the Bankruptcy Code broadly defines a claim as a right to payment, whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . .
11 U.S.C. § 101(5).

The Supreme Court explained that the "right to payment" means an enforceable obligation. *Johnson v. Home State Bank,* 501 U.S. 78, 83 (1991). Legacy Re and Rock Solid are owed something; the broad definition of a claim as a right to payment covers their interests, making them creditors, not just participants in a debt's repayment proceeds.

In *In re South Beach Securities, Inc.* a debtor controlled by Leon Greenblatt tried to have a plan of reorganization confirmed in a bankruptcy case that was designed to avoid taxes by transferring net operating losses from one Greenblatt-affiliated entity, South Beach, to another Greenblatt-affiliated entity, Scattered Corporation, the entity that benefitted from the loan this Debtor's property secured. The bankruptcy court denied confirmation of the plan. *See* 376 B.R. 881 (Bankr. N.D. Ill. 2007). The district court affirmed the bankruptcy court. *See* 421 B.R. 456 (N.D. Ill. 2008). The Seventh Circuit affirmed; it explained its ruling:

> Outside of bankruptcy, South Beach's net operating losses could be used to obtain a tax benefit only if the company received a capital infusion that enabled it to obtain income against which to offset the losses, or if its assets (other than the net operating losses) were acquired by a company that had income or assets. For the general rule is that taxpayers may not transfer net operating loses to other taxpayers. *In re Luster,* 981 F.2d 277, 278-79 (7th Cir. 1992); IRS Private Letter Ruling 9622026 (May 31, 1996). If the plan of reorganization were approved, Scattered would become the owner of South Beach and, wanting to extract a tax benefit from South Beach's net operating losses, would transfer capital to South Beach to enable that company to generate income against which to offset the net operating losses. The result would be to shield income of Scattered from federal tax, because South Beach's income would be Scattered's income since Scattered would be South Beach's sole owner.

*In re South Beach Securities, Inc.,* 606 F.3d 366, 374 (7th Cir. 2010).

The Seventh Circuit also found that the plan had to be rejected because it had not been proposed in good faith which requires that it have a purpose and fact-based hope of preserving a going concern or maximizing property to satisfy creditors. *Id.,* at 376.

By structuring the July 20, 2016 plan to assign limited funds to the co-owner of the debt held by Legacy Re and Rock Solid, insiders may be trying to use their privileged position to disadvantage non-insider creditors. A district judge in an earlier appeal of the South Beach Securities, Inc. case noted that there is no prohibition on insider creditors collecting on their debts as part of a bankruptcy but that the Bankruptcy Code prevents insiders from using their privileged position to disadvantage non-insider creditors. *In re South Beach Securities, Inc.,* 341 B.R. 853, 857 (N.D. Ill. 2006). The Debtors' principals are trying to disadvantage its outside creditors.

There is also the issue of whether the July 20, 2016 plan violates the absolute priority rule in its treatment of Legacy Re and Rock Solid. That rule provides that "[c]reditors in bankruptcy are entitled to full payment before equity investors can receive anything. This is the absolute priority rule." *In re Castleton Plaza, LP,* 707 F.3d 821 (7th Cir. 2013). There a plan of reorganization gave the wife of a debtor's principal 100% of equity (for $375,000) in the reorganized debtor without competitive bidding. The plan filed herein on July 20, 2016 provides that after reorganization the Debtor's assets are to remain with the reorganized Debtor without providing for competition for those assets:

> all of the Debtor's assets shall remain assets of the Debtor, as reorganized, free and clear of all liens, Claims, encumbrances and interests, except those that are expressly created or preserved under the terms of this Plan. Included in those assets shall be all personal property and general intangibles.

Plan, Docket No. 285, Article XIII, ¶ C, p. 16.

The Debtor has asserted that Legacy Re and Rock Solid are not creditors of this bankruptcy estate because they do not have a direct relationship with the Debtor and for that reason can not be heard to object to the Debtor's conduct and plan. If they are not creditors the absolute priority rule would not protect them. Legacy Re and Rock Solid hold part of Excel's secured claim and for that reason are secured creditors protected by the absolute priority rule.

Interestingly, Excel and 330 South Wells LLC argue herein that the assignment to Legacy Re and Rock Solid evince an intention to form a trust with 330 South Wells LLC serving as the trustee. *See* Objection to Legacy Re and Rock Solid Gelt's Motion for an Order Dismissing the Bankruptcy Case, or, in the Alternative, Granting Relief from Automatic Stay, Docket No. 217, pp. 6-7. A trust relationship should not be implied under circumstances where the trustee may be acting under a conflict of interest in relation to its beneficiary.

This Court has not ruled on a motion for summary judgment in Adversary Proceeding 15-499 where Legacy Re and Rock Solid seek to establish their lien and interest in the Debtor's property, asserting that they have a direct claim against the Debtor through their partial assignments. This Court prefers to abstain from resolving this issue to allow the state court to resolve it along with the principals' many other disputes. As noted in the Order allowing Legacy

Re and Rock Solid to amend their Complaint, this court has ruled that they have rights under Illinois law. For purposes of ruling on these motions, this Court finds that Legacy Re and Rock Solid, as assignees of a secured creditor, are partial secured creditors. The plan proposed on July 20, 2016 treats Legacy Re and Rock Solid as noncreditors; this refusal to recognize them as secured creditors while providing for 100% distributions to unsecured creditors and vesting the Debtor's assets in its principals without providing outsiders an opportunity to compete is fatal to the plan. Ignoring them violates bankruptcy's priority rule that secured creditors have priority over unsecured creditors. This court understands that the state court may rule otherwise; this ruling is given for purposes of this case only. Illinois state courts can resolve whether Illinois law recognizes them as creditors with standing to pursue a direct claim against the Debtor. The problem is that the only purpose of this bankruptcy case is to squeeze out Legacy Re and Rock Solid as if they have no rights and no standing; no clear legal authority for that position has been asserted. This court will not countenance having their position discounted at this point without clear authority that they have no rights as secured creditors.

In the *Wachovia* case where District Judge Virginia Kendall noted Leon Greenblatt's conflict of interest, the Court discussed the conduct of Jahelka and Leon Greenblatt in structuring a loan between certain of their entities (Loop Corp. and Banco Panamericano) to shield one of the entities (Loop Corp.), in which Greenblatt held an interest, from its creditors. There the corporate veil was pierced to allow a creditor to obtain satisfaction of its judgment from the entity's owners, Leon Greenblatt and Jahelka. The district court held that the loan "was devised to keep Greenblatt in control of Loop's assets and to avoid paying Loop's creditors." *Wachovia*, 586 F.Supp.2d, at 985. The District Court also found that certain transfers were fraudulent transfers under Illinois law.

In this matter Greenblatt was a borrower at first through Scattered and after certain transfers were made became a co-owner of the debt through Excel Acquisitions and 330 South Wells LLC when it decided to try to squeeze out Legacy Re and Rock Solid who had rights to 29% of the debt through an assignment, not through a participation in repayment proceeds.

The Debtors' principals are attempting to reduce creditors' rights, not increase creditors' distributions or to preserve a going concern. In the South Beach Securities case where the

Seventh Circuit found that the Debtor's principals proposed a plan not in good faith it held:

> To be in good faith a plan or reorganization must have a true purpose and fact-based hope of either 'preserving [a] going concern' or 'maximizing property available to satisfy creditors.'

*In re South Beach Securities, Inc.*, 606 F.3d, at 376.

The plan filed on July 20, 2016 was not filed in good faith. It violates the absolute priority rule and improperly favors unsecured creditors at the expense of secured creditors Legacy Re and Rock Solid. Another problem is that each secured creditor entitled to payment thereunder appears to be associated with the Debtor's principals: Class 1a Senior Secured Claim - Excel: 330 South Wells LLC is Excel's sole member and Jahelka and Richard Nichols manage Excel; Class 2a Secured Claim - 330 South Wells LLC: it is managed by Leon Greenblatt and Richard Nichols; Class 2b - Secured Claim - Leon Greenblatt - Citation Lien and Class 2c - Secured Claim - Repurchase Corp. The Court takes notice of Repurchases Corporation's 2004 Chapter 11 bankruptcy case number 04-32933; its address was 330 South Wells Street, # 712, Chicago, Illinois; Leon Greenblatt signed the petition for bankruptcy relief on behalf of Debtor Repurchases Corporation. Bankruptcy Case 04-32944, Docket No. 1, pp. 1-2. Judge Schmetterer found therein that Leon Greenblatt and his wife owned that debtor. Bankruptcy Case 04-32933, Docket No. 140, p. .2. That Court denied confirmation of a plan and dismissed the case; that ruling was affirmed: 2008 WL 4379035 (N.D. Ill. 2008).

Adversary proceeding 15-506 was filed by 330 South Wells LLC to have the claim of Bridegeview Bank disallowed, and LaSalle Lender's Claim subordinated. The parties have filed cross-claims and counter-claims therein.

### III. Conclusion

The Debtor's principals are involved in a battle for its control. State court is the best forum for resolving their disputes.

This bankruptcy case is dismissed on the motions of the U.S. Trustee and Legacy Re and Rock Solid. All other motions are moot. Adversary Proceedings 15-0499 and 15-0506 shall not proceed and will be dismissed now that the bankruptcy case is being dismissed. Each adversary proceeding involves disputes regarding lien validity, priority and subordination of claims or

interests; these issues are closely related to the matters best resolved in state court and for that reason this Court abstains from hearing them pursuant to 28 U.S.C. § 1334(c).

The Motion to Dismiss at Docket Number 227 is Granted. This bankruptcy case was not filed in good faith.

The Motion for an Order Dismissing the Bankruptcy Case at Docket Number 206 is also Granted. This case represents an attempt to forum shop the underlying internecine battle for control of the Debtor, which is not what bankruptcy is designed to accomplish.

This Bankruptcy Case is Dismissed.

Separate Orders will be entered on the Motions at Docket Numbers 206 and 227.

All other pending motions are moot.

Judge: *Jacqueline P. Cox*

Date: August 4, 2016